1  Tanya E. Moore, SBN 206683
   MOORE LAW FIRM, P.C.
2  300 South First Street, Ste. 342
   San Jose, California 95113
3  Telephone (408) 298-2000
   Facsimile (408) 298-6046
4  E-mail: service@moorelawfirm.com
            tanya@moorelawfirm.com
5
   Attorney for Plaintiff
6  Francisca Moralez

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11 | FRANCISCA MORALEZ,                    ) No.
                                           )
12 |         Plaintiff,                    ) **COMPLAINT ASSERTING DENIAL OF**
                                           ) **RIGHT OF ACCESS UNDER THE**
13 |    vs.                                ) **AMERICANS WITH DISABILITIES ACT**
                                           ) **FOR INJUNCTIVE RELIEF,**
14 | SWICKARD MARIN CORPORATION; SC        ) **DECLARATORY RELIEF, DAMAGES,**
   | MARIN RE, LLC; MERCEDES-BENZ USA,     ) **ATTORNEYS' FEES AND COSTS (ADA)**
15 | LLC;                                  )
                                           )
16 |                                       )
             Defendants.                   )
17                                         )
                                           )
18

19                              **I. SUMMARY**

20      1.      This is a civil rights action by plaintiff FRANCISCA MORALEZ ("Plaintiff")

21 for discrimination at the building, structure, facility, complex, property, land, development,

22 and/or surrounding business complex known as:

23          Mercedes San Rafael
            540 West Francisco Boulevard
24          San Rafael, California 94903
            (hereafter "the Facility")
25

26      2.      Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and

27 costs, against SWICKARD MARIN CORPORATION; SC MARIN RE, LLC; and

28 MERCEDES-BENZ USA, LLC (hereinafter collectively referred to as "Defendants"), pursuant

to Title III of the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.) ("ADA") and related California statutes.

## II. JURISDICTION

3. This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA claims.

4. Supplemental jurisdiction for claims brought under parallel California law – arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

5. Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

## III. VENUE

6. All actions complained of herein take place within the jurisdiction of the United States District Court, Northern District of California, and venue is invoked pursuant to 28 U.S.C. § 1391(b), (c).

## IV. PARTIES

7. Defendants own, operate, and/or lease the Facility, and consist of a person (or persons), firm, and/or corporation.

8. Plaintiff suffers from rheumatoid arthritis and is substantially limited in her ability to walk, and must use a wheelchair for mobility. Consequently, Plaintiff is "physically disabled," as defined by all applicable California and United States laws, and a member of the public whose rights are protected by these laws.

## V. FACTS

9. The Facility is open to the public, intended for non-residential use, and its operation affects commerce. The Facility is therefore a public accommodation as defined by applicable state and federal laws.

10. Plaintiff is a resident of Contra Costa County, California, who regularly travels to the area where the Facility is located for medical appointments and other errands. Plaintiff visited the Facility on or about December 15, 2019 to purchase a vehicle, and on or about January 20, 2020 to purchase a part for said vehicle. When purchasing her vehicle, Plaintiff also purchased a maintenance plan which requires her to bring her vehicle to the Facility for

1 routine service, including oil changes. Plaintiff visited the Facility for automobile service
2 appointments on or about April 6, 2022, December 15, 2022, and April 6, 2023.

3      11.    During her visits to the Facility, Plaintiff has personally encountered barriers
4 (both physical and intangible) that interfered with, if not outright denied, Plaintiff's ability to
5 use and enjoy the goods, services, privileges and accommodations offered at the Facility.
6 These barriers include, but are not necessarily limited to, the following:

    a)   Defendants fail to provide the required number of properly configured and identified accessible and van-accessible parking stalls distributed amongst the different Facility entrances and departments.

        i.   Although parking is provided for customers near the entrance to the showroom and parts department, no accessible parking is provided there. All the accessible parking is on the other side of the building, near the service department. Plaintiff requires a properly configured van-accessible parking stall with adjacent clear and level access aisle within which to deploy the ramp she uses to unload her wheelchair from her van.

        ii.  When Plaintiff visited the showroom in December 2019 to purchase a vehicle, she was unable to locate accessible parking near the showroom, and had to park in a standard parking stall. There was no access aisle, and the space next to Plaintiff's vehicle that she needed to unload her wheelchair was occupied by another vehicle. Plaintiff had to wait for that vehicle to leave before she could unload from her van. Upon returning to her vehicle to leave the Facility, Plaintiff found that another vehicle had parked next to her van, obstructing the space she needed to load back into the van. Plaintiff had to again wait for the other car to leave before she could return to her van, which was uncomfortable and frustrating.

        iii. The parking stall near the showroom was excessively sloped, which

1                       caused Plaintiff difficulty using her wheelchair ramp.

2         iv.     Plaintiff encountered this barrier again when she visited the parts department in January 2020, and had to park in a location that was excessively sloped and lacked an access aisle.

5     b)     Defendants have a policy, practice, or procedure whereby the designated accessible parking is routinely used and/or obstructed by vehicles parked by Facility staff and/or non-disabled customers, such that the required number of designated accessible parking stalls are not made available for use by disabled customers.

10         i.     Although there is designated accessible parking provided near the service department entrance, the parking stalls and/or access aisles are regularly obstructed by parked vehicles that are either for sale, being stored for service, or parked by customers that do not have disabled parking permits.

15         ii.     During each of Plaintiff's visits to the service department, she had difficulty parking in the designated accessible parking stalls because they were obstructed by vehicles not displaying disabled parking placards or license plates, some of which appeared to be dealership stock vehicles. On one occasion, Plaintiff had to wait for a vehicle that did not display a disabled parking permit to pull out of a designated accessible parking stall before she could park. During her April 6, 2023 visit, Plaintiff was not able to park in the designated accessible parking because all of the stalls were obstructed by vehicles that did not display disabled parking permits and appeared to have been parked there by Facility staff.

26         iii.     During Plaintiff's April 6, 2023 visit, when her vehicle was finished being serviced the Facility staff parked it in the passenger loading area for her to pick up rather than moving one of the vehicles parked

                in the designated accessible parking so that she could load back into her vehicle easier.

    c)    Defendants fail to provide a properly configured or identified accessible route from the parking serving the parts department to the parts department entrance.

        i.    The route of travel to the parts department entrance is not properly configured or identified as accessible. As a result, it was difficult for Plaintiff to locate and traverse the excessively long and confusing route when she visited the parts department in January 2020.

        ii.    From her vehicle parked near the showroom entrance, Plaintiff followed the hash-marked pavement markings toward the parts department entrance. The pavement surface was excessively sloped and uneven, which made it difficult and painful for Plaintiff to wheel across. Additionally, the marked route was obstructed by parked golf carts, which Plaintiff had to navigate around.

        iii.    Plaintiff found that the marked route ended at a curb in front of the parts department entrance, with no ramp to access the entrance and no indication of where an accessible route might be located. After looking around, Plaintiff located a curb ramp around the corner, which required travelling through the drive aisle and then backtracking to reach the entrance.

        iv.    The walkway was narrow and difficult for Plaintiff to negotiate in her wheelchair.

    d)    Defendants fail to provide properly configured or identified accessible routes from the designated accessible parking or passenger loading area to the service department entrance.

        i.    The route from the designated accessible parking crosses a busy driveway, and when Plaintiff visited the service department in April

and December 2022, she was afraid that she would be hit by a passing vehicle while she crossed the driveway. Additionally, the clear width of the route was too narrow, as it was obstructed by parked vehicles including golf carts that appeared to be used by Facility staff. In April and December 2022, Plaintiff wanted to go into the parts department to discuss her vehicle with the service advisor, but was deterred from doing so since the route was so intimidating. As such, Defendants fail to provide an accessible route from the designated accessible parking to the service department entrance.

 ii. On April 6, 2023, Plaintiff did go into the service department to speak to a service advisor. She parked in the passenger loading area near the service department entrance, but there was no curb ramp near the loading area and she could not access the entry walkway. Plaintiff had to travel back toward the designated accessible parking to use the curb ramp, and then backtrack along the entry walkway to the entrance.

 iii. The route from the loading area to the curb ramp was excessively sloped and uneven, which made it difficult and painful for Plaintiff to wheel across on April 6, 2023.

e) Defendants fail to provide and/or maintain properly configured and identified accessible building entrances.

 i. The operating pressure and/or closing speed of the doors are not properly adjusted and maintained.

  i. As a result, in January 2020 the door to the parts department closed quickly on Plaintiff while she was trying to wheel through the entrance, which was painful and made it difficult for her to enter.

            ii. The service department entry door was heavy and difficult for Plaintiff to open during her visit on April 6, 2023.

      ii. There are loose floor mats at the entrances to the parts and service departments which caused Plaintiff difficulty wheeling through the doorways during her January 2020 visit to the parts department and April 6, 2023 visit to the service department.

      iii. The threshold at the service department entrance is too high, which also made it difficult for Plaintiff to wheel through the doorway during her April 6, 2023 visit.

f) Defendants fail to provide and/or maintain proper clear width of the accessible routes of travel.

      i. The routes of travel through the showroom are routinely obstructed by parked vehicles and other obstructions that reduce the clear width of the route. As a result, during Plaintiff's December 2019 visit, it was difficult for her to maneuver her wheelchair through the narrow pathways.

      ii. The hash-marked exterior routes of travel are routinely obstructed by parked vehicles including golf carts used by Facility staff. As a result, it was difficult for Plaintiff to navigate from the showroom parking to the parts department entrance in January 2020, and from the passenger loading area to the curb ramp serving the service department in April 2023.

g) Defendants fail to provide the required number of accessible customer work surfaces in the sales and financing departments. The sales and financing service desks lack sufficient knee and toe clearances on the customer side. As a result, during her visit in December 2019 it was difficult and painful for Plaintiff to sit at the desks, which she was

required to do for approximately 90 minutes while completing sales and financing paperwork.

 h) Defendants fail to make the coffee and refreshments provided for customer self-service accessible to wheelchair users. During Plaintiff's December 2019 visit, she was unable to have coffee or refreshments because they were too high for her to reach.

 i) Although there are tables provided for customers to sit at while drinking and eating the provided refreshments, Defendants fail to provide the required number of accessible seating spaces with sufficient knee and toe clearances. As a result, even if Plaintiff could reach the refreshments, she would not be able to sit at a table to eat them.

 j) Defendants fail to provide and/or maintain sufficient clear floor space for a wheelchair in the service department waiting areas. As a result, Plaintiff was uncomfortable and embarrassed during her April 6, 2023 visit. There was no room for her in the indoor waiting area, and no clear space next to the outdoor benches. Plaintiff wanted to sit next to her spouse while waiting, but could not sit near the benches due to the lack of clear space. The only space Plaintiff could find to wait in was next to a trash can, with no seating for her spouse. Plaintiff had to ask Facility staff to bring a chair out for her spouse so that they could sit together next to the trash can.

 k) Defendants fail to provide an accessible women's restroom.

  i. The restroom door requires excessive force to open, and it was difficult for Plaintiff to open during her April 6, 2023 visit.

  ii. There was a rug outside the restroom entrance, which made it difficult for Plaintiff to approach and open the door during her April 6, 2023 visit.

  iii. The threshold at the restroom entrance is too high, and as a result it

                    was difficult for Plaintiff to wheel through the doorway during her April 6, 2023 visit.

        iv.     Sufficient maneuvering, transfer, and turning clearances within the purported wheelchair-accessible toilet compartment are not provided, and/or they are obstructed by furniture. As a result, it was difficult for Plaintiff to use the toilet during her April 6, 2023 visit.

        v.     The lavatory in the women's restroom lacks sufficient knee clearances. As a result, Plaintiff hit her knees on the shelf beneath the lavatory during her April 6, 2023 visit, which was painful.

        vi.     The paper towel dispenser in the women's restroom is positioned behind the restroom entrance door, within the door swing. As a result, Plaintiff could not dry her hands during her April 6, 2023 visit because she was afraid that someone would open the door and it would hit her while she was next to the paper towel dispenser.

    l)     Defendants fail to provide an accessible means for wheelchair users to drop off their vehicles after hours, as the key drop is too high. During her April 6, 2023 visit to the service department, Plaintiff observed this and is aware that she would not be able to deposit the key to drop off her vehicle after hours. Plaintiff is therefore deterred from bringing her vehicle to the Facility for service if she would have to drop it off after business hours.

12. There may exist other barriers at the Facility which relate to Plaintiff's disabilities, and she will seek to amend this Complaint once such additional barriers are identified as it is Plaintiff's intention to have all barriers which exist at the Facility and relate to her disabilities removed to afford him full and equal access.

//

//

//

13. Plaintiff was, and continues to be, deterred from visiting the Facility because Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages, and accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities. Specifically, on multiple occasions within the past two years, Plaintiff has avoided bringing her vehicle in for service since she knows the Facility is inaccessible to her, and has had her spouse bring the vehicle instead. Plaintiff enjoys the goods and services offered at the Facility, and is required to bring her vehicle to the Facility routinely for service given that she purchased a service plan. Plaintiff will undoubtedly return to the Facility once the barriers are removed.

14. Defendants knew, or should have known, that these elements and areas of the Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled. Moreover, Defendants have the financial resources to remove these barriers from the Facility (without much difficulty or expense), and make the Facility accessible to the physically disabled. To date, however, Defendants refuse to either remove those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

15. At all relevant times, Defendants have possessed and enjoyed sufficient control and authority to modify the Facility to remove impediments to wheelchair access and to comply with the 1991 ADA Accessibility Guidelines and/or the 2010 ADA Standards for Accessible Design. Defendants have not removed such impediments and have not modified the Facility to conform to accessibility standards. Defendants have intentionally maintained the Facility in its current condition and have intentionally refrained from altering the Facility so that it complies with the accessibility standards.

16. Plaintiff further alleges that the (continued) presence of barriers at the Facility is so obvious as to establish Defendants' discriminatory intent. On information and belief, Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to adhere to relevant building standards; disregard for the building plans and permits issued for the Facility; conscientious decision to maintain the architectural layout (as it currently exists) at the Facility; decision not to remove barriers from the Facility; and allowance that Defendants' property continues to exist in its non-compliant state. Plaintiff further alleges, on information

and belief, that the Facility is not in the midst of a remodel, and that the barriers present at the Facility are not isolated or temporary interruptions in access due to maintenance or repairs.

## VI. FIRST CLAIM

### Americans with Disabilities Act of 1990

<u>Denial of "Full and Equal" Enjoyment and Use</u>

17. Plaintiff re-pleads and incorporates by reference the allegations contained in each of the foregoing paragraphs, and incorporates them herein as if separately re-pled.

18. Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

19. Defendants discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the Facility during each visit and each incident of deterrence.

<u>Failure to Remove Architectural Barriers in an Existing Facility</u>

20. The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).

21. When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. <u>Id</u>. § 12182(b)(2)(A)(v).

22. Here, Plaintiff alleges that Defendants can easily remove the architectural barriers at the Facility without much difficulty or expense, that the cost of removing the architectural barriers does not exceed the benefits under the particular circumstances, and that Defendants violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

//

23. In the alternative, if it was not "readily achievable" for Defendants to remove the Facility's barriers, then Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

<u>Failure to Design and Construct an Accessible Facility</u>

24. Plaintiff alleges on information and belief that the Facility was designed and constructed (or both) after January 26, 1993 – independently triggering access requirements under Title III of the ADA.

25. The ADA also prohibits designing and constructing facilities for first occupancy after January 26, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

26. Here, Defendants violated the ADA by designing and constructing (or both) the Facility in a manner that was not readily accessible to the physically disabled public – including Plaintiff – when it was structurally practical to do so.[1]

<u>Failure to Make an Altered Facility Accessible</u>

27. Plaintiff alleges on information and belief that the Facility was modified after January 26, 1993, independently triggering access requirements under the ADA.

28. The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's primary function also requires making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. <u>Id</u>.

29. Here, Defendants altered the Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public – including Plaintiff – to the maximum extent feasible.

//

//

//

---

[1] Nothing within this Complaint should be construed as an allegation that Plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Moralez v. Swickard Marin Corporation, et al.*
Complaint

Failure to Modify Existing Policies and Procedures

30. The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

31. Here, Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Facility, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

Failure to Maintain Accessible Features

32. Defendants additionally violated the ADA by failing to maintain in operable working condition those features of the Facility that are required to be readily accessible to and usable by persons with disabilities.

33. Such failure by Defendants to maintain the Facility in an accessible condition was not an isolated or temporary interruption in service or access due to maintenance or repairs.

34. Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

### VII.   SECOND CLAIM

### Unruh Act

35. Plaintiff re-pleads and incorporates by reference the allegations contained in each of the foregoing paragraphs, and incorporates them herein as if separately re-pled.

36. California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

37. California Civil Code § 51.5 also states, in part that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

38. California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

39. Defendants' aforementioned acts and omissions denied the physically disabled public – including Plaintiff – full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

40. These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

41. Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory minimum damages of $4,000 for each offense.

42. Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

## VIII. THIRD CLAIM

### Denial of Full and Equal Access to Public Facilities

43. Plaintiff re-pleads and incorporates by reference the allegations contained in each of the foregoing paragraphs, and incorporates them herein as if separately re-pled.

44. Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

45. Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

46. Plaintiff alleges the Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Facility was not exempt under Health and Safety Code § 19956.

47. Defendants' non-compliance with these requirements at the Facility aggrieved (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly, Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

## IX.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

1. Injunctive relief, preventive relief, or any other relief the Court deems proper.
2. Statutory minimum damages under section 52(a) of the California Civil Code according to proof.
3. Declaratory relief finding that Defendants violated the ADA.
4. Attorneys' fees, litigation expenses, and costs of suit.[2]
5. Interest at the legal rate from the date of the filing of this action.
6. For such other and further relief as the Court deems proper.

Dated: 4/20/2023                                         MOORE LAW FIRM, P.C.

                                                         /s/ Tanya E. Moore
                                                         Tanya E. Moore
                                                         Attorney for Plaintiff
                                                         Francisca Moralez

---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Moralez v. Swickard Marin Corporation, et al.*
Complaint

Page 15

# VERIFICATION

I, FRANCISCA MORALEZ, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated:  4/20/2023                                         */s/ Francisca Moralez*
                                                          Francisca Moralez

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that her concurrence in the filing of this document and attribution of her signature was obtained.

                                                          */s/ Tanya E. Moore*
                                                          Tanya E. Moore
                                                          Attorney for Plaintiff,
                                                          FRANCISCA MORALEZ